[No. 7,281.—Department Two.]

## JOHN MULLER *v.* J. T. CAREY ET AL.

STATE LANDS—ACT OF MARCH 27TH, 1872, FOR THE RELIEF OF PURCHASERS OF STATE LANDS—CONSTRUCTION OF STATUTE.—An application to purchase lieu lands was made by C. September 9th, 1870; and an application to purchase the same land by Myers October 14th, 1871. The application of the latter being approved, he paid the twenty per cent. in interest required by law, and received his certificate December 18th, 1871, and paid in full for the land November 28th, 1877. No further steps were taken by C. after the filing of his application till January 30th, 1877, when he filed his protest against the issuance of any further evidence of title to Myers. On November 4th, 1878, the plaintiff filed an application to purchase the same land, and the case having been referred to the proper court on his demand, and an action commenced by him therein, the Court, upon the above facts, gave judgment in his favor. Upon appeal it was claimed by counsel on both sides that from the time of the passage of the act of April 4th, 1870, amending that of March 28th, 1868, there was no law under which lieu lands could be disposed of by the State.

*Held*, by the Court (assuming this to be the case) that the application of Meyers was validated by the act of March 27th, 1872, and that he was entitled to purchase the land.

Id.—Id.—Id.—The act of March 27th, 1872, for the relief of purchasers of State lands is operative not only upon applications which were defective in form, but upon those which were defective in substance, and the proviso in the act refers only to valid applications.

Appeal from a judgment for the plaintiff in the Superior Court of the County of Sonoma. McGarvey, J.

*Geo. A. Johnson, Barclay Henley,* and *L. D. Latimer,* for Appellants.

Under the curative statute of March 27th, 1872 (statutes 1871–72, p. 587), Myers is entitled to have the judgment reversed, and the cause remanded with instructions to the Court below to render judgment in his favor on the findings. (*Johnson* v. *Squires,* 55 Cal. 104; *Yoakum* v. *Brown,* 52 id. 376; *Rowell* v. *Perkins,* 56 id. 219.) Then the certificate of purchase to Meyers was, without doubt, validated. But how is it with the application of Carey? There could be no application, because there was no law authorizing an application. His application was null and void. Then there was only one application, that of Myers, and the title of the State became vested in him, under the curative act. The case of *Rooker* v. *Johnston,* 49 Cal. 3, is directly in point. It was there held that there were not two or more applications, because the lands had not been surveyed and were not subject to sale, when one of the applications was made. In other words, there was no law to authorize the application.

*Dunlap & Van Fleet,* for Respondent.

The curative act, like all others, was intended solely, and did operate solely, to cure defective applications—applications authorized under the law to be filed, but defective in form—and was not intended to bring into being a thing absolutely void. The application of Myers was admittedly void *ab initio,* a thing the law did not recognize or provide for, and it constituted nothing for the curative act to affect. (*Rooker* v. *Johnston,* 49 Cal. 3.) In the second place this curative act, by its terms, was not intended and can not be construed to affect the Myers application, for the reason that at the passage of

that act, and prior to the issuance of the certificate of purchase on Myers' application, the application of Carey had been filed. The language of the first section of that act strictly limits its operation to instances where "no other application has been made for the purchase of the land prior to the issuance of the certificate of purchase." (*Copp* v. *Harrington*, 47 Cal. 236; § 1 of Act, Stats. 1871–72, p. 587.) So, if it is contended that the Myers application was of a character (had no other application been filed), to be affected by the curative act—which we deny—then we say that the application of Carey, having been filed prior to the issuance of the certificate of purchase to Myers, and having been filed under the same mutilated act, was of equal validity with the application of Myers, and consequently prevented the curative act from affecting Myers' application. It is one of the admitted facts in the case, that at the date of issuance of the Myers certificate, there was an undetermined contest between Myers' and Carey's applications.

SHARPSTEIN, J.:

It is claimed by counsel on both sides, that from the time of the passage of the act of April 4th, 1870, amending that of March 28th, 1868, until the Political Code was adopted, there was no law under which lien land could be disposed of by the State. In support of this they cite two unreported decisions of this Court—*Silver* v. *Mullan*, No. 5935, and *Boggs* v. *Mullan*, No. 5637. We will assume that the learned counsel are correct, and consider the case in that light.

It appears from the agreed statement of facts and by the finding of the Court, that the appellant Carey, on the 9th day of September, 1870, filed in the office of the Surveyor-General an application to purchase the land in controversy, but it does not appear that he took any other step in the premises until the 30th day of January, 1877, when he filed his protest against the issuance of any further evidence of title to said land to the appellant Myers, who, on the 14th day of October, 1871, filed an application to purchase said land, which application was approved on the 2d of December, 1871, and a certificate thereon was issued to the said Myers on the 18th day of December, 1871. Myers paid twenty per cent. and

interest, as the law required, and on the 28th of November, 1877, paid in full for said land. On the 4th of November, 1878, the respondent Muller filed in the office of the Surveyor-General an application to purchase the same land, and demanded that the contest between himself and the appellants be referred to the proper court for trial.

It is stated on his behalf that there was no law in force at the time of the filing of the respective applications of the appellant which authorized such filing, and that therefore said applications and all subsequent proceedings had upon them are null and void. On the other hand it is claimed that the payments made by Myers bring his case within the provisions of the act of March 27th, 1872, which provides that, "when application has been made to purchase land from this State, and payment made to the treasurer of the proper county for the same, in whole or in part, and a certificate of purchase issued to the applicant, the title of the State to said lands is hereby vested in said applicant, or his assigns, upon his making full payment therefor; *provided*, that no other application has been made for the purchase of the same lands prior to the issuance of said certificate of purchase."

The respondent, however, insists that this act " was intended solely, and did operate solely, to cure *defective* applications— applications authorized under the law to be filed, but defective in form, and was *not* intended to bring into being a thing *absolutely void*." We think the scope of the act somewhat broader than that. At the time of its passage there was an act in force (Stats. 1869–70, p. 352) which had the precise effect that respondent insists should be given to the act of 1872.

In the act of 1872 the restrictive words and clauses of the act of 1870 are omitted, which indicates an intention to extend the operation of the law so as to include cases not embraced in the earlier act. The later act does not attempt to legalize invalid applications, but to vest title to the land in those who have paid for it under invalid applications. " The act is operative not only upon applications which were defective in form, but upon those which were defective in substance, *or were invalid for any other reason.* * * * If those steps in the proceedings for the purchase

had been taken prior to the passage of the act, the act operated to validate and confirm the certificate." *Yoakum* v. *Brower*, 52 Cal. 373.) "From what has been said it sufficiently appears that defendant—who made first payment in the proper county—has, by virtue of the act of 1872, acquired a right to complete his purchase in the Land Office, even if the lands he applied for were not the property of the State, *or were not subject to location or disposition* when he filed his application." (*Rowell* v. *Perkins*, 56 Cal. 219.)

But it is further contended on behalf of respondent that the appellant Meyers can not have the benefit of the act of 1872, because the application of appellant Carey was filed before that of Myers. If the application of Carey had been a valid one it would doubtless be entitled to precedence. But it was not valid, and he never made any payment under it. The proviso does not relate to such applications. The application to which it refers need not to be filed before an invalid application is filed, but if filed before a certificate is issued upon such invalid application, it precludes the person filing such invalid application from acquiring any right under it. Of course it could not have been the intention of the Legislature to prefer a subsequent to a prior invalid application. We are satisfied that the person obtaining the certificate and making payments in conformity with the provisions of the act of 1872, was entitled to the benefit of that act, unless a *valid* application *was filed* for the same land before the issuance of such certificate.

Before the trial of this action one W. M. Michelson by leave of the Court filed a complaint in intervention, in which he alleged among other things, that prior to the commencement of the action he acquired by a deed of conveyance from the defendant Myers, his entire interest in said land. This complaint was afterwards, on motion of plaintiff's counsel, stricken out. We think that order was erroneous. But as Michelson was permitted to defend in the name of his predecessor in interest, no harm may have resulted from it—particularly in view of the conclusion which we have arrived at.

The application of the respondent Muller to purchase the land was not filed until after appellant Myers had paid for it in full, and was certainly entitled to a patent for it, unless we

have mistaken the intention of the Legislature in passing the act of 1872.

Judgment reversed, with direction to the Superior Court of Sonoma County to enter a judgment in favor of the defendant, Jackson R. Myers, as prayed in his cross-complaint.

MYRICK, J., and MORRISON, C. J., concurred.